Dickson, J.
This action is brought by the city of Cincinnati, a municipal corporation under the laws of Ohio, against the county of Hamilton,'Ohio.
*275 The facts as developed during the trial appear in the opinion.
The city owns in fee, either by deed or grant or by perpetual lease, certain parcels of ground within the city limits and described in the pleadings. .These grounds are public grounds owned by the public and all charged with public trusts. These grounds are held in trust for the use and benefit of the public.
In the month of February in the year 1905, the then auditor of Hamilton county placed on the grand duplicate these certain parcels of ground in the name of the city and charged against the same the taxes for the year 1904, and for the years prior thereto bach to and including the year 1901—the time of the decennial appraisement—at the current rates of taxation levies for these years, and the same levies as charged against grounds owned by individuals. This auditor corrected various descriptions and placed various values against these various parcels upon the books in his office. In all there are nine parcels of ground in the nine separate causes of action in the petition. These taxes so charged not being paid, this auditor added the usual penalties, and caused the treasurer to proceed to advertise to sell all except one parcel which had been sold.
The plaintiff, the city, claims that the auditor had no right to place these grounds on the duplicate in the name of the city for taxation, because they were used exclusively, for a public purpose, and for this reason they were exempt under the laws of Ohio; claims that the auditor had no right to change, and did not .correctly change the descriptions; claims that the various values placed by the auditor against these grounds' are either placed without any right, or incorrectly placed; claims that the auditor placed against these grounds without any right, charges for taxes, and claims that these grounds can in no event be sold to pay a tax.
The purpose of a tax is to raise a revenue for the state. Each separate levy is for the distinct purpose for which it is levied. Ml taxes levied upon property in Ohio are for a revenue for the state. Without a revenue the state could not exist. The state is the sovereign power of its people and as such is supreme. This supreme power of the state is limited only by the Constitution of the United States and the Constitution of Ohio, The *276 Constitution of Ohio is the limit to the sovereign taxing power of the state. Prom necessity the Constitution can as a rule only state, generally the limits of this sovereign power. In general the means, and in all cases the methods, of raising a revenue by a tax are by the Constitution delegated to the General Assembly. Under this Constitution all grounds are subject to a tax for the revenue of the state. All revenue raised by a tax on grounds belongs to the state. The distribution of this revenue is delegated to the General Assembly and by it apportioned between the state, the county, the school district and the municipal corporation. The government is divided into many departments or branches, and each performs its own function. The power to exempt any ground from taxation is delegated to the General Assembly.
We have to guide us in the application of the law to the issues in this case, the Constitution, the acts of the General Assembly, and the common law. The Constitution and these acts are supreme. The courts can only construe and interpret the Constitution and these acts. In any construction or interpretation of the Constitution and the acts of the General Assembly the courts can not defeat the obvious intent of either. If the intent be clear the court’s duty is clear. If the Constitution and an act conflict, the Constitution must be followed. If the intent of the Constitution or an act be obscure, the courts must construe and interpret by certain well defined rules derived from the common law. The common law can be used only to construe or interpret, but never to contradict. This common law can be used only as an aid, not as a governing or controlling power. These rules of construction and interpretation are so positive that if the General Assembly in prescribing the means and methods for collecting a tax has failed to prescribe a means or method, the courts can not supply the vacuum. The courts can only point out the trouble. The remedy lies only with the General Assembly. Equity will not relieve. Such an omission by the General Assembly is not a mistake, because the sovereign power of the state can do no wrong. Such omission is not a fraud because the sovereign power of the state can not be a party to a fraud. The relief or remedy against any illegal tax *277 is by special injunction—a power specially granted by an act of tbe General Assembly passed for this purpose. The General Assembly has prescribed the means and methods of raising the revenue.
The General Assembly has exempted all public grounds used exclusively for a public purpose.
Under the power as to means and methods certain powers have been given to. the county auditor. The county auditor must make the grand duplicate. He is required to make a list or lists, or see that lists .are made, containing every piece of ground in his county. Such lists must contain, among other things, the name of the owner, a pertinent description of each piece of ground, its value and the amount of taxes to be collected from it. The lists containing the exempted ground must contain all-of these except the one item of the amount of tax to be collected. There is no implied exemption. Exemption from taxation must be expressed in clear and unmistakable terms. The taxes are a charge against the ground—a lien against it. Certain means and methods are prescribed for ascertaining the name of the owner of each parcel of ground, its description, its value, its taxes and whether exempt or not. The auditor is designated as the state’s agent to see that this name, this description, this value and these taxes are all correct. He has the power to correct errors as to all of these matters. The results of his acts as they appear on the duplicate are the state’s acts and are taken prima facie to be correct and are presumed to be correct. The burden of proof is upon the one attacking the items as they appear on the duplicate.
It may be the auditor has committed errors in violation of plain and specific directions, in the Acts, in placing a value on an entire tract when he should have placed separate values upon the separate lots comprising this tract; or, he may have committed errors in adding together certain'values on certain tracts, or errors in description; or, in short, errors not requiring judgment. In this case it is not necessary now to consider such errors for the reason that any injunction against a sale on aceoupt of such errors would be temporary in its nature, and necessary only *278 until such errors- are corrected, while the injunction upon the other grounds asked would be final, that is, exempt or not. And, is there a power to sell or not? Each in its order.
Are these parcels of ground in this ease to be charged with the taxes, or are they exempt—being public grounds used exclusively for public purposes¶
The General Assembly has exempted all public grounds used exclusively for public purposes. The use—“for an exclusive public purpose”—is the test of the right to exemption. ■ ■
Were these parcels of ground used exclusively for -public purposes ?
The city leased these various grounds to different tenants. These leases were in effect during the years from 1901 to 1904 inclusive. Six parcels - were leased to coal companies, one to junk dealers, one to a pile driver, and one to a railroad company. The lease to each tenant is for premises described by metes and bounds. Each lease is for a definite period. A rental is reserved in each letting. In each lease certain restrictions have been made. In no lease has the tenant been restricted from using the ground let for his own private purpose, or compelling him to use it for an exclusive public purpose.
It can not be contended that the business of junk dealer is an exclusive public purpose. The occupation of a pile driver is not a public business, and this us-e of this property is not exclusively for a public purpose. °
It is claimed by the city that the coal business as conducted by its tenants is an exclusive public purpose. The reasons for this contention are: these several properties occupied by these several coal companies are held by the city charged with the trust for use as wharves and landings; that they are located on the Ohio river; that during the times in question the principal business conducted on the Ohio river was the transportation of coal—a public necessity; that coal was received by these tenants in barges, then hauled by steam on trams ,to elevators, and then dumped into bins for distribution to the tenants’ customers, or into yards for storage, to be distributed to the tenants’ customers within and without the city limits when navigation was closed; *279 that such an use created competition between this river coal and coal carried into the city on railroad cars, and that thus the public, the citizens, and the city obtained coal at a cheaper price than if the dependence were upon railroads alone.
The court is of the opinion that this claim is not well taken. If such a claim obtained, each new person entering into any branch of commerce could successfully maintain that he cheapened the product by competition and thus obtain exemption; and thus the state would be shorn of its revenue.
The city contends that it -could properly subdivide its wharf grounds, allotting to different branches of commerce each a separate part, and then -alot to various dealers by metes and bounds, each a separate parcel; that this method would, in effect, be the same as if the city built its own trams, elevators, bins, yards, and handled these same dealers’ tenants coal at fixed charges. There is no doubt that the city, under a power granted by the General Assembly, could permit the city to let to various coal dealers certain parcels of its wharf grounds to be used by these dealers, each exclusively for its own trade, but under such terms and conditions as would make such an use exclusive public use, after the plan of the present market house system. Such a condition or method of letting is not before us. There are no conditions of importance as to use in the letting before the court, except such as are commonly used in every day leases between any landlord and his tenant, except as to one parcel called the Fifth street landing. But even here the tenant is not restricted as to the conduct of its own business. The actual use of this tenant as to this parcel is not for an exclusive public purpose. This tenant used this landing for a coal yard. There is no restriction as to use or manner of use. Each tenant is not even required to use the premises let for the coal business. Each tenant acts as his own consignee. Each tenant handles only his own coal for his own benefit and profit, sells at his own price to his own customers, and may refuse to sell to any one at any price. Neither the city, nor its inhabitants, nor the public are' protected in the use in any way by the terms of the lettings. As well might a railroad company occupying public ground under a *280 similar letting, claim exemption by reason of creating competition against the river coal.
It is claimed by the city that the parcel of ground occupied by the railroad company and let to it for railroad purposes is exempt because its use by the railroad company is for an exclusive public purpose. This land, originally acquired by the city for market house purposes, many years ago was leased to a railroad company, and is now held by a railroad company under a lease for ninety-nine years, renewable forever. The building now on the ground was formerly a railroad passenger station, but now used as a warehouse, and returned for taxation by the railroad company as personal property under the railroad taxing laws of Ohio. The use of this warehouse is i'n substance as follows: In it on the ground are two tracks connected with the main line of the railroad; cars are run into it on these tracks and from these cars freight belonging to various consignees is unloaded and hoisted by elevators to the floors above. Outgoing freight is ’ handled in the same manner in reverse order, but only on occasions. The general or chief business there conducted is the handling of inbound freight. All freight from the time it enters until it leaves this property is charged warehouse rates. The railroad company as to such freight within this warehouse has entirely ceased to be or had not become a common carrier for hire.
Should this ground thus used be charged against the railroad company and taxed as personalty? Such an use of this ground by the rafroad company may be—probably is—necessary. Such use certainly is a convenience to the railroad company and its shippers. But, is this use necessary io the daily running of the railroad? The court is of the opinion that the true test in such an issue is: A line should be drawn when and where the railroad company ceases its relation to this freight as a common carrier and begins its relation as a warehouseman. Such an use by the railroad company will not stand this test. The court sees no distinction between such an use of this ground and the use made by any private concern of the ground occupied by railroad tracks up to and within its building.
*281 Should this ground thus used be charged against the city and taxed as ground not used exclusively for a public purpose?
The court is of the opinion that such an use is a private use for the benefit of the tenant, the railroad company, and differs in no respect from any other warehouse used for the storage of merchandise, and for this reason this ground is not exempt.
Having found that all of the parcels of ground described in the petition are public property, and also having found that no one of them is used exclusively for a public purpose, the conclusion must be that these grounds are not exempt and are properly charged with a tax.
If is claimed that neither the city nor the General Assembly had any power to make these leases; that there is no power vested anywhere to make such leases of such public grounds; that these leases are void and that the lessees are mere trespassers; that the mere use by a mere trespasser without any right, however he might use the public grounds, would not make this ground for this reason subject to taxation. There is no doubt that the common law would grant relief in a proper case against that strict construction of the words of the exemption act, which would tax public ground occupied by a squatter. While it is true that the parcels of ground described in the petition are public grounds, and that they must be kept for that purpose, yet these grounds are properly in the custody of the city and the city has been given authority to lease. This power is given always with the understanding that such a letting must not destroy the public use. This public use is to be read into and is a part of each lease, and the holding of each tenant is subject to the necessities of the public to be by such necessities curtailed or even destroyed. Each tenant is an occupant subject to being ejected at any time the necessity of the public demands. Such a sooner determination of the letting would leave the tenant without any claim for any damage for such an end of his letting. Such leases are in effect terminable at thé will of the public whenever necessity occur. If, during the time of such letting such grounds are used by the tenants for their own use and that use is not for an exclusive public purpose, these grounds during such time and so used are *282 not exempt from, but are subject to taxation. The occupancy or use of any public grounds must be controlled and governed by public necessity. If the public necessity require a revenue in rental from a tenant using the public ground for his own use and in no way -an exclusive public purpose, a tax must be assessed against this public ground so used. It is but just that such grounds so used, producing an income—rental—in the hands- of the trustee, should bear their share of the burden of taxation. One of the reasons for the rule of exempting public grounds used exclusively for a public purpose is that they produce no rental revenue. The same rule would obtain without any rental. The test for this rule is: Is the public ground used for an exclusive public purpose?
This court is asked to enjoin the sale of these grounds charged with these taxes, because the officers of the state have no right to sell the same for non-payment of taxes. Each parcel of ground involved herein is public ground held as a public trust for the benefit of the public. All the parcels are charged with a trust; either wharf property, or landing property, or market property, of public property. The trustee is the city—the agent of the state—the government. The city can not sell or change the purposes of the trust without the permission of the General Assembly. The General Assembly has granted a power to lease, not a power to sell; the trust remains; the public, the state, has not abandoned its rights. The uses' and enjoyments of the trusts by the public are to be renewed at the expiration or sooner determination of the lease. The temporary diversion of these trusts makes these grounds taxable, if during the temporary diversion they were not used for. a public purpose.
■ The taxes- charged are a lien on these grounds. By the regular modes and methods for collecting the taxes these liens will be foreclosed by sales, unless restrained by the court.
- Can the modes and methods of sale to collect a tax be enforced against these public grounds?
It is well settled by the authorities that the modes and methods enacted by the General Assembly for enforcing a personal judgment by execution and levy and sale against public property *283 do not obtain. The reason is that such modes and methods were prescribed for the individual. It would be wrong to permit the individual by general laws, to destroy a branch of the government. To permit such an act wou'd tend to destroy the government itself.
The courts have suggested another method, mandamus, to compel the making of a levy to satisfy such a judgment.
By analogy this court does not see why the same reasoning would not apply when the very government, itself is at stake in the attempt to sell one of its branches to pay a tax. The public grounds perform a function as necessary to the life of the government as any other department or branch of the government. I.f there be a difference it is in degree and not in kind.
The court is of the opinion that the law should prevent the sale of public grounds for the non-payment of a tax charged against the grounds. The means and modes prescribed for raising revenue by a tax on property were made in reference to the property, real and personal, of the individual. It is claimed that in an action to collect a debt there is a judgment, while in the collection of a tax on grounds there is only a lien, and that such a lien can only be enforced by a sale of the ground.
The collection of a debt by a judgment and execution, and by the sale of public property would destroy the government.
The saA of public property—public grounds—to colled a tax would destroy the government.
If the preservation of the government be a good reason in the one case, it is equally as good a reason in the other.
It is claimed that there is no authority to make a levy to pay such a lien for such a tax.
It is not generally the province of the court, the judiciary, to prescribe remedies, but rather the province of the General Assembly. If there be no remedy provided in the acts, to enforce the collection of a tax rightly charged against public grounds without a sale, it is the duty of the General Assembly to provide the remedy. The General Assembly has passed an act permitting a personal judgment against the owner to collect a tax not paid on personal property.
*284 The amount of taxes—the grand total levy—charged against these several properties is correct. But the court is of the opinion that if the city by any future act of the General Assembly pay out of a fund, then there should be credited on the amount that part which would be paid back to the city, ■ and that the balance, namely, the state, the county, and the school levies only should be collected from the city.
The injunction against the sale of any of these properties is for the reason that any sale of public property to pay a tax is contrary to law and would tend to destroy the very foundation of all government.
It is but just that the city out of its rentals and profits should pay its share of the revenue of the state embraced in the levies for state, county and public schools. The state, the county and public schools perform functions enjoyed by the city, and the city in return should compensate out of its profits these several departments for and during the temporary loss to the public of these public grounds.
The court is of the opinion that.the grayer of the petition should be granted and that the treasurer be perpetually restrained. Any attempted sale for a tax of any of the grounds involved in this ease will be set aside.
Any rights of the various tenants occupying these public grounds are not now before the court and are not determined by this opinion.
The court has had the assistance of many able and industrious counsel in this case. A great many eases and text-books have been cited. The court has not in this opinion cited any case or any text-book in support of its opinion, deeming it sufficient to say that in its opinion no authority has been cited against the results arrived at or the reasons therefor.